Springer, J.,
dissenting:
I would affirm the judgment of the trial court except with respect to punishment. The matter should be returned to the Board for imposition of punishment less than termination.

NEGLECT OF DUTY AND GIVING ASSISTANCE TO SUSPECTS

The charge of neglect of duty arises out of an encounter between Berni and some suspected prostitutes, in the prostitute’s motel room. Berni had previously learned that one of the women had given him a false name and decided to go about searching the motel room for evidence of criminal activity. During the search he discovered some thirty pornographic magazines. While he was examining the magazines, one of the suspects kneeled over in a position that would expose her posterior to Berni’s view and asked him if her anatomy compared favorably with what was portrayed in the magazines. The suspect in question claimed that Berni accepted the invitation and made the suggested anatomical comparison tactilely as well as visually. This momentary distraction forms part of the basis of charges that Berni “neglected” his duties as a police officer; but the main thrust of the charges relates to the manner in which he later conducted himself during off-duty hours.
Berni’s off-duty encounter with the women arose as a result of *965 a “sting” executed by police officers who were investigating Berni. By this time the women were cooperating with officers who were investigating Berni, and the women were offered “lots of money” if they would assist the investigating officers in incriminating Berni. The investigating officers instructed the women to tape any further contacts with Berni and to undress themselves and to fondle Berni or do anything else they thought of that might compromise Berni. When Berni made his off-duty visit to the women’s motel room, the women started (as instructed by the investigating officers) to disrobe themselves and to expose their sexual apparatus. When, on cue, the investigating officers were let into the room by the prostitutes, Berni was not fully clothed, but he was not engaging in sexual activities with the women. The women later “disappeared” and did not testify against Berni during the disciplinary proceedings.
The two trial judges who heard this case on two consecutive occasions were both of the opinion that although Berni was probably guilty of conduct unbecoming a police officer, there was insufficient evidence to support the charge that he was at the same time guilty of neglect of duty.
The first trial judge who heard this judicial review considered the source of the accusations (the unavailable prostitutes) and the hearsay nature of the statements of two prostitutes who had been promised “a lot of money” to entrap Berni to be “impalpable and suspect” and of “very dubious quality.” This was particularly true in light of the failure on the part of those making the charges against Berni to produce these vital witnesses at the hearings.
The first trial judge also concluded, as I do, that although the momentary and consensual touching that went on between Berni and the two prostitutes might be seen as supporting findings of “conduct unbecoming” an officer or “consorting with persons of ill repute,” the more serious charges of neglect of duty cannot stand.
The first trial judge remanded the case back to the Board, giving the Board an opportunity to develop findings of fact to support the mentioned charges. The Board, however, did not comply with the court’s instructions. After the remand, the matter was heard by another trial judge. After the second review, the second trial judge concluded that he, too, was “not satisfied with anything presented at the Board at this time in regard to [the charges ‘Giving Assistance to Suspects’ and ‘Neglect of Duty’]. Therefore, I’m going to take it for granted that there is no evidence regarding those two issues, and they should be dismissed from the complaint.”
The “neglect of duty” charge, under Department Rule 4/ 102.11, requires either (1) the failure to “comply, by act or *966 omission, with any law, or with any order, procedure, rule or regulation of the Department” or (2) performance of official duties “in a manner which could bring discredit upon himself, upon the Department, or upon any other member of the Department.”
Failure to comply with the law or rules and procedures does not seem to be what this case is about. It can be argued, however, that Berni, in making the first visual and tactile comparison of one of the prostitute’s derrieres, while he was on duty, was performing his official duties in a manner that would bring discredit to himself or upon the Department. It seems to me, however, that any discredit that he might bring upon himself or the Department was limited to discredit in the eyes of the woman who invited him to share momentarily in her bounty and the other woman who was present in the motel room. I would not argue that it was the proper thing to do, but I think that the two trial judges were entitled to conclude that this brief encounter did not amount to “neglect of duty.” If Berni had done these things in the parking lot, for example, there would be a different case; but a momentary yielding to the temptations offered to make the subject inspection, although certainly not performed in the line of duty, do not seem to create a likely expectation that it would result in any appreciable discredit or disgrace to Berni or to the Department. I would affirm the trial court’s judgment relative to the charges of neglect of duty.
With regard to the charges of “giving assistance to suspects,” I understand that in his first encounter with the women in question, Berni engaged them in a conversation relating to ways in which prostitutes in general could divert attention to themselves and thus lessen the chances of their arrest. This conversation took place at a time when Berni thought that he might be dealing with prostitutes and appears to be part of an inquiry designed to determine whether or not the women in question were in fact prostitutes. These kinds of statements by Berni appear to me to be more designed to gain the suspect’s confidence than an attempt to school them in the methods of carrying out a successful criminal career. Berni spoke to them in non-specific terms about the ways and methods employed by prostitutes in general, and he did not go about instructing the women about how to evade the law. The trial court judges who heard this case correctly concluded that this conversation was employed to try to get the women to admit that they were prostitutes and that the conversation was general in nature and not a particular attempt to give “assistance” to them so that they could avoid an imminent arrest. Berni freely admitted discussing these matters with the women, and it appears to me that had Berni not been the target of an investigation, these conversations would have created no inferences of improper *967 conduct. Giving the worst of it to Berni, Berni might be said to have been using bad taste in saying anything about the manner in which prostitutes evade detection, but to me this is at most a momentary lapse of good judgment and cannot be described in terms of the very serious misconduct called “giving assistance to suspects.”
Also, with regard to these “assistance to suspects” charges, I would note that to violate Department Rule 4/102.06 Berni must have communicated “information which may delay arrest or enable persons guilty of criminal acts to escape arrest.” To have violated this rule Berni had to have given information to these women with the intention of assisting them in avoiding arrest for acts of prostitution. At the time of the conversation, Berni did not know if they were prostitutes or not. Certainly his conversation could not have had the effect of either delaying an imminent arrest or allowing the women to escape arrest for “criminal acts” that they had committed. At the point of Berni’s conversation with these women there were no criminal acts that had been committed by the women; and Berni’s general conversation with them could not have constituted communicating “information” that might have allowed them to delay or escape arrest for the past commission of criminal acts. There is no violation of the “giving assistance” rule; and it appears to me that this charge was constructed just as a part of an attempt to prefer as many charges as possible against this officer and not in the serious belief that Berni was actually giving aid and assistance to the enemy.

THE LIMITATION OF PUNISHMENT

It does not appear to me that the review proceedings before the district court covered the issue of whether the Board had abused its discretion in terminating Berni; therefore, I think that the district court exceeded its scope of review when it altered the punishment imposed by the Board. The trial court should have returned the issue of punishment to the Board. The district court appears to have acted reasonably in imposing its lesser punishment on the assumption that Berni’s most egregious conduct occurred off-duty. In my opinion, however, although the court could properly have put limits on the punishment or could have suggested a reasonable sanction to the Board, it did not have the power to decree a specified punishment. I would therefore remand the case to the district court with instructions to submit the case to the Board for imposition of punishment (short of termination) for conduct unbecoming a police officer and for consorting with persons of ill repute.